USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:\_7/17/2018\_\_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                  :
AMARA B. SCHWARTZ,               :
                        Plaintiff,  :
                                     :     17 Civ. 8973 (LGS)
          -against-               :
                                     :     **OPINION AND ORDER**
THE NEW YORK STATE INSURANCE FUND,:
                      Defendant.  :
                                       :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Amara B. Schwartz brings this action against Defendant the New York State Insurance Fund ("NYSIF"), alleging violations under the Rehabilitation Act of 1973 ("Rehabilitation Act"), Title VII of the Civil Rights Act of 1964 ("Title VII"), Title II of the Americans with Disabilities Act ("ADA"), and the New York Human Rights Law ("NYHRL"). Defendant moves to dismiss the Second Amended Complaint ("SAC") in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Defendant's motion to dismiss is granted.

## I.    BACKGROUND

      The following is based on allegations in the SAC, documents attached to or integral to the SAC, and facts of which the Court is permitted to take judicial notice. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). As required for the present motion, all factual allegations in the SAC are assumed to be true. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

### A.    Plaintiff

      Plaintiff Schwartz is an employee of the Defendant NYSIF, an agency of the State of New York. Plaintiff works as an Insurance Fund Hearing Representative. She has been

employed in various positions with NYSIF since 1983. During the relevant time period, her primary job functions as a Hearing Representative "consisted of representing the NYSIF during worker[']s compensation hearings, defending NYSIF in relevant matters, conducting depositions and otherwise participating in the entire process . . . ." Although Plaintiff complains of racial discrimination, the SAC does not state her race.

### B. Race Discrimination and Adjustment Disorder

In May 2005, Plaintiff brought a Workers Compensation claim against NYSIF. In April 2007 at a Workers Compensation hearing, "it was established that Plaintiff suffered from adjustment disorder with mixed depressed mood, anxiety and chronic emotional distress" ("adjustment disorder"). In December 2007, NYSIF denied Plaintiff's request for a lighter workload as a reasonable accommodation of her adjustment disorder.

On February 4, 2008, Plaintiff filed a charge of discrimination with the EEOC based on race and disability (i.e. her adjustment disorder). Plaintiff received an EEOC Right to Sue letter in April 2009, and in November 2009 commenced a federal action against NYSIF for discrimination on the basis of race, disability, hostile work environment and retaliation. The action was dismissed for failure to state a claim on March 22, 2012.[1]

Also in early 2008, Plaintiff filed a grievance claim with NYSIF for its failure to grant her reasonable accommodation request or assign her to a position "consistent with the limitations imposed upon [her]" because of her disability. In March 2008, NYSIF allowed Plaintiff "to appear at the Workers Compensation Board once per week, with fewer assigned depositions."

---

[1] The Opinion and Order Granting Motion to Dismiss in *Schwartz v. New York State Insurance Fund*, No. 9 Civ. 9172 (S.D.N.Y.) is a publicly available document of which this Court may take judicial notice. *E.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (taking judicial notice of a publicly available document on a motion to dismiss).

From 2009 to 2011, Plaintiff consistently applied for lateral transfers and other vacant positions. These positions went to other employees with less experience and qualifications and who were outside of Plaintiff's protected class.

On May 27, 2011, a Workers Compensation Board found that Plaintiff has a permanent partial disability under Workers' Compensation Law, resulting in a 70-percent permanent impairment, due to her adjustment disorder.

Plaintiff endured discriminatory treatment from 2011 to 2013. On February 12, 2013, Plaintiff filed a grievance with NYSIF alleging disparate treatment and failure to provide reasonable accommodations. She was again provided a workload consisting of "WCB hearings once per week, with a regular calendar day in the morning, with odd parts in the afternoon, one deposition per week assigned at least (48) hours in advance."

In June 2013 and August 2014, Plaintiff applied to positions at an NYSIF office. She interviewed for both positions but was not offered either one. Her husband, who is also a hearing representative with NYSIF, sent an email to supervisors noting that "two Caucasian males were appointed to the position[s]," even though Plaintiff had superior qualifications. On June 23, 2015, Plaintiff attended a meeting regarding her husband's complaint to the Inspector General. Plaintiff did not pursue these concerns.

On November 13, 2014, Plaintiff sent an email to a supervisor regarding the retaliation and harassment she was enduring. She also noted her participation in the investigation that targeted one of her supervisors, and how Caucasian males were given "unaccounted for time spent off the calendar, inconsistent assignments and workload, modifications and predesignated assigned calendar days." In December 2014, Plaintiff received a response from NYSIF, asking if

3

there had been changes to Plaintiff's schedule or assignments that led to Plaintiff's November 13, 2014, email.

On September 21, 2015, Plaintiff wrote to NYSIF due to its failure to provide Plaintiff with a work schedule accommodation as agreed in March 2013. The next day, Plaintiff was told that her workload was increased, despite the 2008 and 2013 Grievance decisions, due to the office's overall workload and case demands. On October 5, 2015, Plaintiff filed a grievance due to "[NYSIF]'s revocation of accommodations previously provided with retaliatory acts resulting from Plaintiff's complaints and protected activity." This grievance was denied in November 2015. Plaintiff complained to her supervisors in December 2015 regarding the disparate treatment she had endured following her protected activity, but these complaints were ignored. Plaintiff and her husband were "counseled" in response to their complaints. On January 4, 2016, Plaintiff and her husband filed a grievance based on a counseling memo. NYSIF removed the counseling memo in response, but did not resolve the substance of the points raised by Plaintiff and her husband.

In February and March 2016, Plaintiff sent NYSIF supervisors several letters complaining of continued discriminatory treatment and failure to accommodate. She told NYSIF supervisors that non-African American males were given extra leverage in determining schedule changes, and that she needed a reasonable accommodation for her disability. On April 5, 2016, Plaintiff received a letter from a supervisor instructing her not to have any contact with Ms. Carretta -- a NYSIF supervisor whom Plaintiff had emailed in February 2013 regarding discriminatory treatment, interviewed with for vacant positions in 2013 and 2014, contacted in September 2015 regarding work accommodations, communicated with in February and March 2016 regarding discriminatory treatment and work accommodations, and about whom Plaintiff

4

had written regarding Ms. Carretta's personal relationship with Plaintiff's husband in March 2016.

### C. Ankle Injury and Laptop

On April 9, 2009, Plaintiff injured her ankle, sustaining a left ankle injury that required surgery. A doctor recommended Plaintiff should limit weight carrying to ten pounds or less. NYSIF offered Plaintiff a laptop that fit this accommodation.

In April 2015, Plaintiff's lightweight laptop was taken due to hardware issues. In July 2015, Plaintiff was given a mini laptop. On September 15, 2015, Plaintiff's mini laptop was taken away. Plaintiff complained to a supervisor, but another supervisor responded to say that "he had no recollection [or] knowledge of any reasonable accommodation afforded to Plaintiff regarding her use of a company issued netbook as [a] reasonable accommodation."

### D. The Current Action

On February 16, 2016, Plaintiff provided the EEOC with documents to support her pending claims for retaliation, harassment and disparate treatment. Plaintiff received a "Right to Sue" letter from the EEOC dated June 6, 2016. She filed a complaint *pro se* with the Eastern District of New York on August 12, 2016. On November 13, 2017, the action was transferred to the Southern District of New York. On December 21, 2017, Plaintiff obtained counsel, and on March 28, 2018, filed her Second Amended Complaint.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

In order to survive a motion to dismiss under Rule 12(b)(1), "the plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017). All material allegations in the

Complaint are accepted as true; however, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins.*, *v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *accord Senatore v. Ocwen Loan Servicing, L.L.C.*, No. 16 Civ. 8125, 2017 WL 3836056, at *2 (S.D.N.Y. Aug. 31, 2017). In considering 12(b)(1) motions, a court may rely on evidence outside the pleadings. *See Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns, S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015); *accord Baker-Rhett v. Aspiro AB*, No. 16 Civ. 5801, 2018 WL 3094921, at *4 (S.D.N.Y. June 22, 2018).

### B. Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

For the reasons stated below, the New York Human Rights Law Claims (Counts Five and Six) are dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and the remaining Counts (Counts One through Four) are dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A. New York State Law Claims (Counts Five and Six)

The SAC improperly alleges violations of New York Human Rights Law against NYSIF, a state agency entitled to Eleventh Amendment immunity. The Eleventh Amendment bars claims against state agencies for state law violations sought in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 119-21 (1984); *Catone v. Spielmann,* 149 F.3d 156, 160 n.1 (2d Cir. 1998); *Smith v. N.Y. State Dept. of Corr. Servs.*, No. 15 Civ. 3455, 2018 WL 2305566, at *7 (S.D.N.Y. May 21, 2018); *Lees v. Graduate Ctr., City Univ. of N.Y.*, No. 16 Civ. 6303, 2016 WL 9649914, at *2 (S.D.N.Y. Dec. 21, 2016) ("The Eleventh Amendment [] bars suits in federal court against non-consenting states for violations of state law, including state and local statutes, such as the State and City Human Rights Laws."). NYSIF is a state agency entitled to Eleventh Amendment immunity from state law claims, including the New York Human Rights Law. *Strunk v. N.Y. State Ins. Fund*, 47 F. App'x 611, 612 (2d Cir. 2002) (summary order) ("[C]laims against the NYSIF, a state agency, are barred by the Eleventh Amendment."). The New York Human Rights Law Claims -- Counts Five and Six -- are dismissed.

### B. ADA Claim (Count Four)

Plaintiff fails to state an employment discrimination claim under Title II of the ADA. "A public employee may not bring a Title II [discrimination] claim against his or her employer, at least when the defendant employer employs fifteen or more employees." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013). NYSIF is a state agency that employs more than fifteen employees. *See generally In re September 11 Litig.*, 751 F.3d 86, 90 n. 1 (2d Cir. 2014) (facts are subject to judicial notice under Federal Rule of Evidence 201(b) when "they are 'not subject to reasonable dispute,' are 'generally known within the trial court's territorial

jurisdiction,' and 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'").

Although the SAC couches the ADA claim as one for discrimination in access to "public services," the SAC lacks any allegation that Plaintiff sought services from NYSIF. In her memorandum of law in opposition to NYSIF's motion to dismiss, Plaintiff admits that her ADA claim is meant to remedy the "discrimination in the terms, conditions and privileges of [her] employment." Count Four, the ADA claim, is dismissed.

### C. Title VII Claims (Counts Two and Three)

The SAC fails to allege a sufficient Title VII claim because disability is not a protected class under Title VII, and the SAC does not allege exhaustion of her race discrimination claims. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. §2000e-2(a). By its terms, Title VII does not protect against discrimination based on disability. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 148 (2d Cir. 2018) (Title VII "did not protect those discriminated against . . . on the basis of age or disability; that required later legislation" citing e.g., the ADA).

The SAC also alleges a Title VII claim based on racial discrimination, but the SAC does not allege that Plaintiff asserted this claim before the EEOC as required. "Before bringing a Title VII suit in federal court, an individual must first present the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (alteration in original) (internal quotation marks omitted). "[C]laims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are 'reasonably related' to the claim filed with the agency." *Id.*

(quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)). Claims are reasonably related to the filed claim "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003)).

Plaintiff contends that her race discrimination claims are reasonably related to her disability discrimination claims. This argument is unpersuasive. The SAC does not allege that Plaintiff's 2015 EEOC action included an investigation into racial discrimination. While the SAC states that Plaintiff notified Ms. Carretta, a NYSIF employee, of alleged racial discrimination, it does not state that she notified the EEOC.

The Title VII Claims -- Counts Two (Title VII Retaliation) and Three (Title VII Hostile Work Environment) -- are accordingly dismissed.

### D. Rehabilitation Act Claim (Count One)

The SAC purports to state a claim of discrimination under the Rehabilitation Act, 29 U.S.C. § 794. This claim fails for two independent reasons: the SAC does not properly allege that Plaintiff is disabled within the meaning of the statute or that she suffered an adverse employment action due to her disability. The SAC's allegations pertaining to the Rehabilitation Act claim are conclusory and lack factual specifics sufficient to state a plausible claim.

"[T]he Rehabilitation Act provides that 'the standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under the Americans with Disabilities Act of 1990 as such sections relate to employment.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 n. 2 (2d Cir. 2003) (original alterations omitted) (quoting 29 U.S.C. § 794(d)); *accord Itzhaki v. Port Auth. of N.Y. & N.J.*, No. 15 Civ. 7093, 2017 WL 213808, at *3 (S.D.N.Y. Jan. 17, 2017). The

9

ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To assert an adverse action employment discrimination claim under the Rehabilitation Act, a plaintiff must allege: "(1) the employer is subject to the [Rehabilitation Act]; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Bruzzese v. Sessions*, 725 Fed. App'x 68, 71 (2d Cir. 2018) (summary order) (internal quotation marks omitted); *accord Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

### 1. Disability Within the Meaning of the ADA

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(a).

The SAC does not sufficiently allege that Plaintiff's adjustment order is a disability within the meaning of the ADA.[2] The SAC does not sufficiently allege that Plaintiff's adjustment disorder substantially limited a major life activity. While the SAC alleges that

---

[2] Plaintiff's memorandum of law clarifies that adjustment disorder is the basis for the Rehabilitation Act claim, rather than Plaintiff's ankle injury. Even if the SAC had expressly pleaded adjustment disorder as the basis for the claim, the allegation would be insufficient as discussed above in the text.

10

Plaintiff has been diagnosed with an adjustment disorder, including a finding by a Workers Compensation Law Judge that "Plaintiff was classified with a 70% permanent impairment," the SAC lacks any allegation regarding *how* Plaintiff's adjustment disorder substantially limited a major life activity. *See Graham v. Macy's Inc.*, No. 14 Civ. 3192, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (holding that a plaintiff diagnosed with bipolar disorder failed to allege a disability within the meaning of the ADA where "the Complaint does not explain how that impairment 'substantially limits one or more' of [the plaintiff]'s 'major life activities'"); *see also Telemaque v. Marriott Int'l, Inc.*, No. 14 Civ. 6336, 2016 WL 406384, at *7 (S.D.N.Y. Feb. 2, 2016) (a single allegation that plaintiff's arthritis prevented him from moving quickly "[did] not support a plausible inference of a *substantial* work limitation") (emphasis in original).

In response, Plaintiff's memorandum of law asserts -- without citation to the SAC -- that "Plaintiff's mental condition at times affected her ability to perform manual tasks," and "during the most severe episode substantially affected major aspects of major life activity," and that "Plaintiff's mental impairment had a permanent impact on her ability to perform certain aspects of her job without accommodation along with a substantial effect on certain aspects of her major life activities." Not only are these contentions outside of the SAC, but they lack the particularity needed to pass the threshold to plausible. *See Iqbal*, 556 U.S. at 678.

### 2. Adverse Employment Action Due to Disability

"[A] plaintiff must show that the adverse employment action 'took place under circumstances giving rise to an inference of discrimination.'" *Davis*, 804 F.3d at 235.

11

The SAC fails to allege any facts that give rise to an inference that Plaintiff's workload was returned to a full slate *because* of her adjustment disorder.[3] To the contrary, she alleges NYSIF stated it increased Plaintiff's workload due to business needs. *See e.g.*, *Decastro v. Norrell Corp.*, No. 15 Civ. 944, 2018 WL 340032, at *3 (S.D.N.Y. Jan. 9, 2018) (finding an insufficient claim for discrimination under the ADA where the complaint did not contain allegations that the plaintiff was discriminated against because of his disability); *Osby v. City of New York*, No. 13 Civ. 8826, 2016 WL 4372233, at *7 (S.D.N.Y. Aug. 15, 2016) (finding an insufficient claim for discrimination under the ADA where "the complaint is bare of facts supporting any connection between [the plaintiff]'s disability and her failure to be promoted"). That NYSIF did not provide Plaintiff with data to support their business need does not suggest discriminatory motivation. For these reasons, Count One (Rehabilitation Act) is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. If Plaintiff believes that she can sufficiently replead the Rehabilitation Act claim, consistent with this Opinion, within three weeks from the date this Opinion and Order is filed, Plaintiff shall file a letter not to exceed three single-spaced pages, along with her proposed new pleading marked to show changes from the SAC. The letter shall explain how the proposed complaint cures the deficiencies identified in this Opinion or otherwise states a sufficient claim. Defendant shall

---

[3] An increase in workload, in certain circumstances, can constitute an adverse employment action. *See, e.g.*, *DeLuca v. Sirius XM Radio, Inc.*, No. 12 Civ. 8239, 2017 WL 3671038, at *13 (S.D.N.Y. Aug. 7, 2017) ("A change in workplace responsibilities may have an adverse impact on the terms and conditions of employment if the employee experiences 'an increase in workload and location-specific stress,' [or] is given 'different job responsibilities[.]'"); *Joseph v. Brooklyn Developmental Disabilities Servs. Office*, No. 12 Civ. 4402, 2016 WL 6700831, at *21 (E.D.N.Y. Sept. 30, 2016) ("[A] disproportionately heavy workload *can* constitute an adverse employment action.") (emphasis in original).

respond no later than two weeks after the filing of Plaintiff's letter.  Plaintiff shall not file a reply unless one is requested.

The Clerk of Court is respectfully directed to close the motion at Docket Number 39.

Dated: July 17, 2018
      New York, New York

                                    **LORNA G. SCHOFIELD**
                                   **UNITED STATES DISTRICT JUDGE**